IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Allegheny Ludlum, LLC, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | No.: 2:17-CV-001243-PJP |
| | ) | |
| vs. | ) | Judge Peter J. Phipps |
| | ) | |
| Liberty Mutual Insurance Company; Liberty Mutual Fire Insurance Company; Hartford Casualty Insurance Company; Hartford Accident and Indemnity Company; Continental Casualty Company; United States Fidelity and Guaranty Company, | ) ) ) ) ) ) ) | **FILED ELECTRONICALLY** |
| Defendants. | | |

**PLAINTIFF ALLEGHENY LUDLUM, LLC'S BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY CONCERNING THE DEFENDANT INSURERS' TREATMENT OF OTHER *BELL CARR* DEFENDANTS**

Plaintiff Allegheny Ludlum, LLC ("Allegheny Ludlum"), by and through its undersigned counsel, K&L Gates LLP, files this Brief in Support of Plaintiff Allegheny Ludlum LLC's Motion to Compel Discovery Concerning Defendant Insurers' Treatment of Other *Bell Carr* Defendants ("Motion to Compel").

**I.      INTRODUCTION**

This is an insurance coverage action in which Allegheny Ludlum seeks recovery for defense and indemnity costs Allegheny Ludlum incurred in defending and settling certain underlying Alabama bodily-injury lawsuits.

1

In the present Motion to Compel, Allegheny Ludlum seeks to compel the Defendant Insurers[1] to respond to four interrogatories, and to provide documents and testimony related to those four interrogatories. The Defendant Insurers object to this discovery on the basis of relevance, burden, and privilege/confidentiality. Each of these objections is meritless, and the Defendant Insurers should be compelled to comply with the sought-after discovery, for the following three reasons, and as discussed more fully below.

***First,*** the sought-after discovery is indisputably relevant to the two main issues in this case. The first issue has to do with whether the policies the Defendant Insurers sold to Allegheny Ludlum are triggered by the bodily-injury lawsuits that certain third parties brought against Allegheny Ludlum in Alabama, known collectively as "the *Bell Carr* Litigation," or simply "*Bell Carr*." Two of the Defendant Insurers — Liberty Mutual and Hartford — claim that their policies are not triggered due to the effect of an appellate ruling in the *Bell Carr* litigation. And yet discovery in this case has already revealed that both Liberty Mutual and Hartford provided coverage to at least one other *Bell Carr* defendant three years after they claim all of Allegheny Ludlum's *Bell Carr* coverage was extinguished by this appellate ruling. Allegheny Ludlum is entitled to follow-up discovery regarding the Defendant Insurers' treatment of this and other *Bell Carr* defendants, since such discovery will shed light on the merits of their "trigger" coverage defense and on whether Liberty Mutual and Hartford are applying that defense to Allegheny Ludlum, but not other policyholders, in bad faith.

---

[1] The "Defendant Insurers" against whom Allegheny Ludlum brings the instant Motion to Compel are Defendant Liberty Mutual Insurance Company and Defendant Liberty Mutual Fire Insurance Company (referred to collectively are "Liberty Mutual"); Defendant Hartford Casualty Insurance Company and Defendant Hartford Accident and Indemnity Company (referred to collectively as "Hartford"); and Defendant Continental Casualty Company ("CNA"). Defendant United States Fidelity & Guarantee Company ("Travelers") has responded to the sought-after discovery and therefore is not a subject of the Motion to Compel.

The second issue has to do with whether the Alabama cause of action of "wantonness" — which was the only cause of action remaining in *Bell Carr* as of August 2007 — is covered. All of the Defendant Insurers now assert that wantonness is not covered, despite holding a contrary position for many years prior to the initiation of this action. Remarkably, discovery has revealed that at least two of the Defendant Insurers provided coverage to another *Bell Carr* defendant as late as August 2012 — five years after wantonness was the only remaining relevant cause of action in *Bell Carr*. Allegheny Ludlum is entitled to follow-up discovery regarding the Defendant Insurers' denial of coverage to Allegheny Ludlum on grounds that inexplicably appear to not have applied to similarly-situated policyholders with respect to the exact same underlying claim. This Court has previously compelled discovery regarding similarly-situated policyholders in circumstances where that discovery was even less obviously relevant than it is here.

***Second***, the Defendant Insurers' burden objections are baseless, because Allegheny Ludlum is seeking answers to a narrowly-tailored list of four interrogatories, as well as supporting documents and testimony, regarding a limited number of other policyholders. By contrast, where courts have denied discovery into how an insurer has handled the claims of other policyholders on the basis of burden, they have done so only because the discovery was deemed a "fishing expedition" into "all documents" pertaining to potentially thousands of other policyholders, or something similar. Moreover, one Defendant Insurer witness has already admitted in sworn deposition testimony that the information Allegheny Ludlum seeks is likely easily obtainable through a search of that Defendant Insurer's computer systems.

***Third***, any privilege or confidentiality concerns are meritless, since the discovery Allegheny Ludlum seeks is merely a follow-up on discovery that the Defendant Insurers have

already produced. Having produced certain other-policyholder information, and having made no objection to Allegheny Ludlum's use of this information during multiple depositions, the Defendant Insurers cannot now complain that revealing the names of other policyholders, or producing communications with other policyholders, raises privilege or confidentiality concerns.

For all of these reasons, and as discussed more fully below, Allegheny Ludlum's Motion to Compel should be granted.

## II. BACKGROUND

### A. The *Bell Carr* Plaintiffs' Allegations

Arvin-Meritor, Inc. ("Arvin-Meritor") operated an automobile muffler manufacturing facility in Fayette, Alabama from 1964 until May 2002.[2] In November 2003, several hundred former Arvin-Meritor employees (the "*Bell Carr* plaintiffs") sued Arvin-Meritor, alleging that they were injured as a result of exposures to hazardous and toxic chemicals and other materials during their employment at the facility.[3] In May 2005, the *Bell Carr* plaintiffs filed their first amended complaint, adding numerous new defendants, including Allegheny Ludlum.[4]

In their first amended complaint, the *Bell Carr* plaintiffs brought a number of causes of action against Allegheny Ludlum and the other defendants, including trespass, negligence, and "wantonness."[5] However, in 2007, after the adjudication of certain motions to dismiss, the *Bell Carr* plaintiffs acknowledged that all of their claims were time barred except "wantonness."[6] In August 2007, the *Bell Carr* plaintiffs filed a second amended complaint, which dropped all

---

[2] ECF No. 1, at ¶ 24.
[3] *Id.* at ¶ 25.
[4] *Id.* at ¶ 26.
[5] *See* ECF Nos. 1-23, 1-24.
[6] *See Bell Carr, Jr. v. Int'l Ref. & Mfg. Co.*, 13 So. 3d 947, 949-52 (Ala. 2009).

claims against the *Bell Carr* defendants except "wantonness."[7]

### B.     Allegheny Ludlum Tenders Defense of *Bell Carr* to the Defendant Insurers

In 2005, shortly after being brought into the *Bell Carr* litigation, Allegheny Ludlum tendered *Bell Carr* to Liberty Mutual and Hartford[8] — a tender both insurers acknowledged.[9] In addition to acknowledging the tender, Liberty Mutual accepted the "lead" role in the defense of *Bell Carr* and represented that it would coordinate a "cost share" with Hartford.[10] Liberty Mutual also acknowledged that the law firm Allegheny Ludlum had retained to defend the *Bell Carr* litigation – Maynard, Cooper & Gale ("Maynard Cooper") – was "an approved Liberty Mutual firm."[11] In the present litigation, multiple Liberty Mutual witnesses have acknowledged that in order to be on Liberty Mutual's "approved" list, a law firm would have been "vetted" by Liberty Mutual and determined to be competent.[12] Notably, neither Liberty Mutual nor Hartford denied coverage at this time — or at any other time, until the present litigation was filed — on the basis that "wantonness" was not covered under their policies.

### C.     The 2009 Alabama Supreme Court Decision

In January 2009, the Supreme Court of Alabama decided that a six-year limitations

---

[7] *See* ECF No. 1-24.  The second amended complaint also includes a workers compensation cause of action against the *Bell Carr* plaintiffs' employer that has no relevance here.

[8] CNA and Travelers were provided notice at a later date.  No Defendant Insurer has claimed that Allegheny Ludlum's *Bell Carr* notice was in any way untimely.

[9] *See* August 14, 2013 email from Lindsay Saldutti (acknowledging that "Hartford was placed on notice … in July 2005."), a true and correct copy of which is attached hereto as Exhibit 1; April 4, 2006 letter from Arthur Helmus to Roger Heins, a true and correct copy of which is attached hereto as Exhibits 2; June 6, 2005 letter from Roger Heins to Liberty Mutual, a true and correct copy of which is attached hereto as Exhibit 3; January 25, 2006 email from Carol Hackett to Roger Heins, a true and correct copy of which is attached hereto as Exhibit 4.

[10] *See* Exhibit 4, at AL_LM_0001475 — AL_LM_0001476.

[11] *Id.* at AL_LM_0001476.

[12] December 5, 2018 Deposition of Christine Edney Deposition, relevant excerpts of which are attached hereto as Exhibit 5, at 40:9-41:25; December 4, 2018 Deposition of Steven Gottsche, relevant excerpts of which are attached here as Exhibit 6, at 72:15-74:16.

period applied to the *Bell Carr* plaintiffs' "wantonness" cause of action (the "2009 Alabama Supreme Court Decision").[13] This 2009 Alabama Supreme Court Decision had the effect of dismissing plaintiffs from the *Bell Carr* litigation who suffered injury **solely** before May 6, 1999, but still allowing plaintiffs to remain in the litigation as long as they suffered at least some injury on or after May 1999 and before May 2002 (at which point the Arvin-Meritor plant closed).[14]

Allegheny Ludlum and Hartford expressly discussed the 2009 Alabama Supreme Court Decision in May 2009.[15] For its part, Liberty Mutual communicated independently with Maynard Cooper regarding developments in the *Bell Carr* Litigation, and communicated with defense counsel for at least one other *Bell Carr* defendant other than Allegheny Ludlum regarding developments in *Bell Carr*.[16] As such, Liberty Mutual either knew or should have known about the 2009 Alabama Supreme Court Decision shortly after it was issued.

Neither at the time that it was issued in January 2009, nor in May 2009, nor at any time over the ensuing twenty months did any party interpret the 2009 Alabama Supreme Court Decision as having any implications, negative or otherwise, for Allegheny Ludlum's coverage rights under any of the Hartford or Liberty Mutual policies.[17]

Then, after a September 14, 2010 telephone conference that Liberty Mutual and Hartford

---

[13] *See Bell Carr, Jr.*, 13 So. 3d at 949-55.
[14] *Id.*
[15] *See* May 11, 2009 Colleen Hannegan email to Marcy Spada attaching 2009 Alabama Supreme Court Decision, a true and correct copy of which is attached hereto as Exhibit 7; Hartford Claim Notes, a true and correct copy of which is attached hereto as Exhibit 8, at HART000072.
[16] *See* Liberty Mutual Claims Remarks, a true and correct copy of which is attached hereto as Exhibit 9, at AL_LM_0001291 - AL_LM_0001297; AL_LM_0001317 - AL_LM_0001318.
[17] A review of both the Hartford Claim Notes and Liberty Mutual Claims Remarks shows that neither Hartford nor Liberty Mutual interpreted the 2009 Alabama Supreme Court Decision as having any coverage implications with respect to Allegheny Ludlum from January 2009 until September 2010.

requested to have with Allegheny Ludlum[18], a misinterpretation of the 2009 Alabama Supreme Court Decision emerged.[19]  The misinterpretation consisted of the mistaken view that even if a plaintiff was permitted to remain in the *Bell Carr* Litigation after the issuance of the 2009 Alabama Supreme Court Decision, that plaintiff's *damages* somehow were limited to only those damages arising from injury that occurred between 1998 and 2002.[20]  This misinterpretation led Allegheny Ludlum to the mistaken view that Hartford's coverage obligations terminated as of the date of the 2009 Alabama Supreme Court Decision, since Hartford's policy periods all expired prior to 1998, and that as a result Hartford owed Allegheny Ludlum only a percentage of defense costs incurred as a result of the *Bell Carr* Litigation through December 31, 2008, *i.e.*, up until the 2009 Alabama Supreme Court Decision was issued in January 2009.

Although it had independently asked for and participated in the September 14, 2010 telephone conference, Liberty Mutual emerged from that conference with a different understanding of the coverage situation than either Allegheny Ludlum or Harford.[21]  Liberty Mutual's view, as reflected in its internal "Claims Remarks," was that due to certain unspecified "discovery" developments[22], "only … policies *incepting with 1998* and beyond would be triggered.  The most recent [Liberty Mutual] policy goes 6 months into 1998, so lead carrier

---

[18] *See* September 14, 2010 email from Colleen Hannegan to Steven Gottsche, a true and correct copy of which is attached hereto as Exhibit 10; September 14, 2010 email from Marcy Spada to Colleen Hannegan, a true and correct copy of which is attached hereto as Exhibit 11; September 14, 2010 conference call initiation, a true and correct copy of which is attached hereto as Exhibit 12.

[19] *See* September 15, 2010 email from Colleen Hannegan to various recipients and attachment, a true and correct copy of which is attached hereto as Exhibit 13.

[20] In actual fact, the 2009 Alabama Supreme Court Decision had nothing whatsoever to say about what damages the *Bell Carr* plaintiffs could recover.  *See Bell Carr, Jr.*, 13 So. 3d at 949-55.

[21] *See* Exhibit 9, at AL_LM_0001309; Exhibit 6, at 191:10-215:11.

[22] There in fact were no such discovery developments.

going forward would be the Hartford."[23] Liberty Mutual's view was incorrect on a number of points, including the fact that "the most recent Liberty Mutual" policy actually goes ten months into 1998, not six, and the fact that Hartford's Allegheny Ludlum policies do not extend past 1998.[24]

### D. Liberty Mutual's Changing Coverage Position And The 2013 Cost-Share

More than a year later, in January of 2013, Liberty Mutual revised its purported understanding of the coverage situation.[25] Liberty Mutual's new position was that "the only policies triggered were those *incepting after 1998*, meaning, the Liberty policies were not triggered…."[26] In other words, Liberty Mutual went from a view that the "trigger period" for *Bell Carr* was 1998-2002 — a "trigger period" which implicated the last policy Liberty Mutual issued to Allegheny Ludlum — to a view that the "trigger period" was 1999-2002 — a "trigger period" that conveniently excluded all of Liberty Mutual's policies.

On the basis of this new position, and taking advantage of the fact that Allegheny Ludlum was still operating under the incorrect interpretation of the 2009 Alabama Supreme Court Decision, Liberty Mutual foisted on Allegheny Ludlum and the other Defendant Insurers cost-share percentages for *Bell Carr* defense costs incurred through December 31, 2008 (the "2013 cost-share").[27] Multiple insurer witnesses who personally participated in the 2013 cost-share discussions — including the Liberty Mutual claims-handler who led those discussions — have admitted that the 2013 cost-share was predicated on the incorrect understanding of the 2009 Alabama Supreme Court Decision that emerged after the September 14, 2010 telephone

---

[23] Exhibit 9, at AL_LM_0001309 (emphasis added).
[24] Exhibit 6, at 191:10-215:11; Exhibit 5, at 124:16-25.
[25] *See* Exhibit 9, at AL_LM_0001323.
[26] *Id.* (emphasis added).
[27] *See* March 14, 2013 email from Ann Berdahl to Christine Edney, a true and correct copy of which is attached hereto as Exhibit 14.

conference with Liberty Mutual and Hartford.[28] Pursuant to the 2013 cost-share, Liberty Mutual and Hartford both reimbursed Allegheny Ludlum for a portion of its *Bell Carr* defense costs incurred through December 31, 2008.[29] At no time during any of the discussions that resulted in the 2013 cost-share did any of the Defendant Insurers ever suggest that "wantonness" was not covered.

### E. Allegheny Ludlum Realizes That The Interpretation of the 2009 Alabama Supreme Court Decision Was Mistaken And Notifies the Defendant Insurers

Allegheny Ludlum operated under the mistaken interpretation of the 2009 Alabama Supreme Court Decision, and the 2013 cost-share that resulted from it, until 2016, at which point it realized the mistake. Having realized the mistake, it attempted to explain the mistake to the Defendant Insurers.[30] Subsequent to those discussions, CNA and Travelers agreed with Allegheny Ludlum that the 2009 Alabama Supreme Court Decision did not limit the *Bell Carr* "trigger period" to either 1998-2002 or 1999-2002 but that ***all*** policies from 1964 through 2002 remained triggered in the aftermath of that Decision.[31] Liberty Mutual and Hartford, however, continue to insist that the 2009 Alabama Supreme Court Decision somehow extinguished their coverage obligations.

### F. The Defendant Insurers Invoke The "Wantonness" Defense

Notwithstanding their disagreement regarding the "trigger" issue, each of the Defendant

---

[28] *See* Exhibit 5, at 156:2-19; November 20, 2018 Deposition Transcript of Gary Swanson, a true and correct copy of which is attached hereto as Exhibit 15, at 65:7-72:9.
[29] *See* Exhibit 14.
[30] *See* November 7, 2016 letter from Thomas J. Smith to Christine Edney, a true and correct copy of which is attached hereto as Exhibit 16; November 7, 2016 letter from Thomas J. Smith to Lindsay Saldutti, a true and correct copy of which is attached hereto as Exhibit 17; November 7, 2016 letter from Thomas J. Smith to Jori Young, a true and correct copy of which is attached hereto as Exhibit 18; December 13, 2016 letter from Thomas J. Smith to Gary Swanson, a true and correct copy of which is attached hereto as Exhibit 19.
[31] *See* March 29, 2017 letter from Scott Turner to Thomas J. Smith, a true and correct copy of which is attached hereto as Exhibit 20; Exhibit 15, at 109:21-113:6.

Insurers, as well as Travelers, have refused to provide Allegheny Ludlum with coverage for *Bell Carr* on the grounds that the Alabama cause of action of "wantonness" is an intentional tort and, as such, is not covered under their policies.[32]

### G.   The Alabama *Bell Carr* Trial Court Denies Allegheny Ludlum's Motion for Summary Judgment Seeking To Bar Plaintiffs' Recovery For Alleged Exposures Occurring Prior to May 6, 1999

In June of 2017, Liberty Mutual's approved firm Maynard Cooper moved for summary judgment in *Bell Carr* on behalf of Allegheny Ludlum, seeking, *inter alia*, a declaration that "Plaintiffs may only seek to recover damages attributable to injuries occurring within the Operative Limitations Period of May 6, 1999, to May 30, 2002. Injuries resulting from alleged exposures before May 6, 1999 are time barred."[33] The trial court ***denied*** this motion, leaving Allegheny Ludlum potentially liable at trial for injuries caused by exposure during the entire 1964-2002 period.[34]

---

[32] Liberty Mutual, Hartford, and Travelers suddenly discovered this coverage defense for the first time a few months before the present lawsuit was filed, despite the fact that for much of the previous decade they acknowledged that their policies covered wantonness. CNA asserted the "wantonness" defense in 2012, but then apparently withdrew it in 2013. Specifically, CNA denied coverage on the basis of the "wantonness" defense in 2012, but then in 2013 wrote to Allegheny Ludlum and the other Defendant Insurers that it "agreed to participate in the defense under a reservation of rights." *See* November 9, 2018 Deposition Transcript of Ann Berdahl, at true and correct copy of which is attached hereto as Exhibit 21, at 63:20-65:6; *compare* March 2, 2012 letter from Ann Berdahl, a true and correct copy of which is attached hereto as Exhibit 22 *with* Exhibit 14.

[33] ECF No. 1-25, at 53.

[34] Transcript of Motion for Summary Judgment Hearing, a true and correct copy of which is attached hereto as Exhibit 23, at 190:12-13. Liberty Mutual and Hartford have suggested that in addition to the 2009 Alabama Supreme Court Decision, another Alabama Supreme Court decision – *Jerkins v. Lincoln Electric Co.,* 103 So. 3d 1 (Ala. 2011) – also limited the *Bell Carr* plaintiffs to damages arising from injuries suffered within the 1999-2002 limitations period, thereby eliminating the coverage obligations of policies with periods prior to 1999-2002. Maynard Cooper on behalf of Allegheny Ludlum relied on *Jerkins* when it sought a declaration that the *Bell Carr* plaintiffs could only recover damages attributable to injuries suffered within the 1999-2002 limitations period. *See* ECF No. 1-25, at 53. The *Bell Carr* trial court denied the motion anyway.

Allegheny Ludlum settled the underlying *Bell Carr* Litigation in August of 2017.[35] All the Defendant Insurers were consulted regarding the settlement prior to execution of the settlement agreement. No Defendant Insurer objected to the settlement.

### H. Allegheny Ludlum Discovers That Liberty Mutual and Hartford Defended *Bell Carr* Defendants Other Than Allegheny Ludlum As Late As August 2012

During discovery, Liberty Mutual produced an email between Liberty Mutual, Hartford, and Contacts Metals and Welding — one of Allegheny Ludlum's co-defendants in the *Bell Carr* matter — regarding Contacts Metals and Welding's defense in *Bell Carr*.[36] When questioned about this email at their recent depositions, a Hartford witness identified one of its recipients as a Hartford claims handler,[37] and a Liberty Mutual witness identified another of its recipients as a Liberty Mutual claims handler, and admitted that Liberty Mutual provided a defense to multiple *Bell Carr* defendants other than Allegheny Ludlum, including Contact Metals and Welding, among others.[38] No Defendant Insurer has ever objected to either the production of this document or Allegheny Ludlum's deposition questions regarding this document.

### I. The Defendant Insurers Categorically Refuse to Respond to Allegheny Ludlum's Limited Discovery Requests Regarding the Defendant Insurers' Treatment of Other Bell Carr Policyholders.

On October 31, 2018, Allegheny Ludlum served Liberty Mutual and Hartford with discovery requests seeking additional information regarding their treatment of Contact Metals and Welding and any other *Bell Carr* defendants to whom they provided coverage.[39] Allegheny

---

[35] ECF No. 1, at ¶ 34.
[36] Exhibit 9, at AL_LM_0001317 - AL_LM_0001318.
[37] November 29, 2018 Deposition Transcript of Marcy Bryan, a true and correct copy of which is attached hereto as Exhibit 24, at 111:5-9.
[38] Exhibit 5, at 15:18-16:17; 70:23-84:24.
[39] Allegheny Ludlum's Second Set of Interrogatories Directed to Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company, a true and correct copy of which is attached hereto as Exhibit 25; Allegheny Ludlum's Second Set of Interrogatories Directed To

Ludlum's requests consisted of four narrowly tailored interrogatories that sought information relating to the policy periods of these other *Bell Carr* policyholders and amounts paid for *Bell Carr* on their behalf, communications the insurers may have had with other *Bell Carr* policyholders regarding the 2009 Alabama Supreme Court Decision and the impact of that decision on the coverage positions of the other *Bell Carr* policyholders, and whether coverage had been denied to the other *Bell Carr* policyholders on the basis of "wantonness." Allegheny Ludlum also asked for documents related to these four interrogatories, and for Fed. R. Civ. P. 30(b)(6) deposition testimony regarding the answers to these interrogatories.[40] On November 2, 2018, Allegheny Ludlum served substantially identical interrogatories and document requests on CNA and Travelers.[41] Allegheny Ludlum's Fed. R. Civ. P. 30(b)(6) notices to the Defendant Insurers include a request for corporate testimony regarding the other-policyholder interrogatories and document request.[42]

Liberty Mutual, CNA, and Hartford all objected to these discovery requests, and refused

---

Hartford Casualty Insurance Company and Hartford Accident and Indemnity Company, a true and correct copy of which is attached hereto as Exhibit 26.

[40] Allegheny Ludlum's Second Set of Requests for Production of Documents Directed To Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company, a true and correct copy of which is attached hereto as Exhibit 27; Allegheny Ludlum's Second Set of Requests for Production Directed To Hartford Casualty Insurance Company and Hartford Accident and Indemnity Company, a true and correct copy of which is attached hereto as Exhibit 28.

[41] Allegheny Ludlum's Second Set of Interrogatories Directed to Continental Casualty Company, a true and correct copy of which is attached hereto as Exhibit 29; Allegheny Ludlum's Second Set of Interrogatories Directed To United States Fidelity & Guarantee Company, a true and correct copy of which is attached hereto as Exhibit 30; Allegheny Ludlum's Second Set of Requests for Production Directed to Continental Casualty Company, a true and correct copy of which is attached hereto as Exhibit 31; Allegheny Ludlum's Second Set of Requests for Production Directed To United States Fidelity & Guarantee Company, a true and correct copy of which is attached hereto as Exhibit 32.

[42] True and correct copies of the Rule 30(b)(6) notices may be found at Exhibits 33-36.

to answer them substantively.[43] Travelers responded by representing that "USF&G does not have any claims for *Bell Carr* Litigation defendants under policies issued by USF&G other than Allegheny Ludlum."[44] Consequently, the present Motion to Compel is not brought against Travelers.

Allegheny Ludlum met and conferred with the Defendant Insurers regarding the discovery at issue in the present Motion to Compel on December 11, 2018. The Defendant Insurers have acknowledged that the present Motion to Compel is ripe.[45]

### III.  ARGUMENT

#### A.  Legal Standard

The scope of discovery is set out in Fed. R. Civ. P. 26(b)(1), which provides in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

On a motion to compel discovery, relevant materials are discoverable and should be produced unless they are privileged, or unless the opponent of the motion can establish that the requested discovery is irrelevant, oppressive, or would impose an undue burden. *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982). The burden of proof with respect to whether the requested discovery is irrelevant, burdensome, or oppressive is on

---

[43] True and correct copies of the Defendant Insurers' objections and responses to the at-issue discovery can be found at Exhibits 37-42.
[44] True and correct copies of Travelers' responses can be found at Exhibits 43-44.
[45] *See* December 11, 2018 email from David R. Osipovich, a true and correct copy of which is attached hereto as Exhibit 45.

the opponent of the discovery, and that burden cannot be met by mere assertion. *Id.*

Indeed,

> the mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting discovery must show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.

*Id.* (internal citations and punctuation omitted).

As the United States Supreme Court, the United States Court of Appeals for the Third Circuit, and this Court have all determined, "relevance" under Rule 26 is to be broadly and liberally construed. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."); *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999) ("It is well recognized that the federal rules allow broad and liberal discovery."); *Lopez v. CSX Transp., Inc.*, No. 3:14–257, 2015 WL 5971682, at *2 (W.D. Pa. Oct. 14, 2015) "…[T]he scope of discovery under the Federal Rules is broad….").

With respect to the specific type of discovery at issue in the present Motion, this Court has previously held that in the context of an insurance coverage dispute, information pertaining to the defendant insurers' other policyholders is discoverable subject only to the relevance, burden, and privilege considerations that apply to any request for discovery, and that there is no "blanket protection" for other-policyholder information. *See Mine Safety Appliances Co. v. North River Ins. Co.*, No. 2:09–cv–00348–DSC, 2012 WL 4339560, at *3 (W.D. Pa. Jan. 27, 2012) ("There is no blanket protection from discovery for other insureds' claims. Once relevance is established,

discovery will be permitted regarding other insureds' claims so long as the requests are not unduly burdensome, and confidential information is protected.").

Similarly, courts in other jurisdictions routinely grant motions to compel the production of other-policyholder information. *See, e.g., PECO Energy Co. v. Ins. Co. of N. Am.*, 852 A.2d 1230, 1235 (Pa. Super. Ct. 2004) ("Other insureds' claims information has been allowed for reasons similar to those declared by Appellee … therefore, we too will allow [this] discovery."); *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, No. 88–9752, 1991 WL 111040, at *3 (E.D. Pa. June 17, 1991) (rejecting the insurer's burden argument regarding the production of other-policyholder information and holding that "I shall … follow the well established law that allows for liberal discovery and that does not penalize the party seeking discovery for the other parties unwieldy record keeping system…."); *Abi Jaoudi &Azar Trading Corp. v. Cigna Worldwide Ins. Co.*, Nos. 91–6785, 91–6784, 1993 WL 410069, at *2 (E.D. Pa. Sept. 30, 1993) (permitting narrowly-tailored other-policyholder discovery); *Reibert v. CSAA Fire & Cas. Ins. Co.*, No. 17–CV–350–CVE–JFJ, 2018 WL 279348, at *6 (N.D. Okla. Jan. 3, 2018) (holding that "discovery regarding Hancock's performance of other roof inspections is relevant to whether [the insurer] acted reasonably and in good faith [with respect to the plaintiff policyholder]….") (internal citations and punctuation omitted).

**B.    The Discovery Allegheny Ludlum Seeks Is Indisputably Relevant**

Liberty Mutual and Hartford have taken the position that Allegheny Ludlum is not entitled to any coverage under their policies for *Bell Carr* costs incurred after January 16, 2009, which is the date of the 2009 Alabama Supreme Court Decision.  Yet there is evidence that both Liberty Mutual and Hartford provided some sort of *Bell Carr*-related insurance coverage to

Contact Metals and Welding as late as August 2012 **-- *more than three and a half years*** after Liberty Mutual and Hartford say Allegheny Ludlum's *Bell Carr* coverage was extinguished.  The reason for this apparent discrepancy is unquestionably relevant to both Allegheny Ludlum's claims in this action — including its bad faith claims against Liberty Mutual and Hartford — and to Liberty Mutual's and Hartford's defenses.  If Liberty Mutual and Hartford defended other *Bell Carr* policyholders after the time they told Allegheny Ludlum there was no more *Bell Carr* coverage, and these other policyholders had policies with periods preceding May 6, 1999, this would belie Liberty Mutual and Hartford's arguments regarding the purportedly coverage-defeating effect of the 2009 Alabama Supreme Court Decision.

Similarly, if any of the Defendant Insurers provided coverage to any other *Bell Carr* defendant for *Bell Carr* after the only claim remaining in *Bell Carr* was "wantonness" — that is, after August 2007 — this would be obviously relevant to the Defendant Insurers' recently-advanced argument that "wantonness" is not covered.  And indeed it already appears that Liberty Mutual and Hartford did in fact provide coverage to at least one *Bell Carr* defendant more than five years after "wantonness" became the only cause of action at issue in *Bell Carr*.

Notably, none of the Defendant Insurers have explained the reason for the apparent disparate treatment of Allegheny Ludlum as compared to at least one other *Bell Carr* defendant. No Defendant Insurer has argued that Allegheny Ludlum was somehow differently situated from this other *Bell Carr* defendant to whom at least two of the Defendant Insurers provided coverage for *Bell Carr*, or had different policy language in its policies, or had different policy periods that justified the disparate treatment.  Indeed, when Allegheny Ludlum sought follow-up discovery regarding the Defendant Insurers' treatment of other *Bell Carr* policyholders, the Defendant Insurers did not offer any explanation at all.  Instead, they simply categorically refused to

provide Allegheny Ludlum with any additional information or documents pertaining to their treatment of the other *Bell Carr* defendants to whom they provided coverage.

This Court has previously found an insurer's "treatment of claims made by similarly situated policyholders" to be relevant and discoverable. *Mine Safety Appliances*, 2012 WL 4339560, at *2-3. Indeed, in *Mine Safety Appliances*, the Court granted the policyholder's motion even though the policyholder was requesting information about ***potential*** other similarly-situated policyholders, before there was any evidence that there actually were any other such similarly-situated policyholders. Here, by contrast, there is already evidence provided by the Defendant Insurers themselves that at least some other *Bell Carr* defendants besides Allegheny Ludlum were the Defendant Insurers' policyholders.[46] Indeed, the names of two such other policyholders — Contacts Metals & Welding and Alloy Rods — are already known.[47] The relevance of how the Defendant Insurers treated these other *Bell Carr* policyholders is even more clear than the relevance of information pertaining to the potential, unknown other policyholders that this Court found in *Mine Safety Appliances*.

For these reasons, the relevance of the requested information is beyond dispute.

### C. The Discovery Allegheny Ludlum Seeks Is Not Unduly Burdensome On the Defendant Insurers

It is the Defendant Insurers' burden to explain how answering each one of the four at-issue interrogatories is unduly burdensome, and this burden cannot be carried by their mere say-so. *Josephs*, 677 F.2d at 992 ("…[T]he mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting

---

[46] *See* Exhibit 5, at 70:23-84:24.
[47] *See id.*

discovery 'must show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'"). Here, the Defendant Insurers cannot meet their burden.

As discussed above, it has already been established that at least some of the Defendant Insurers provided some sort of coverage to other *Bell Carr* defendants besides Allegheny Ludlum. The universe of *Bell Carr* defendants is limited to only a few dozen entities. Moreover, the names of at least two such *Bell Carr* defendants are already known. Producing the Claim Remarks and *Bell Carr*-related communications with respect to these other *Bell Carr* defendants would be as simple and free of burden for the Defendant Insurers as it was to produce the Allegheny Ludlum Claim Remarks and communications. Moreover, a Liberty Mutual witness has testified that information pertaining to these other *Bell Carr* policyholders, including their policy periods, is easily obtainable from a search of Liberty Mutual's computer system.[48]

When courts have refused to grant motions to compel the production of other-policyholder information, they have done so because the policyholder was clearly pursuing a broad "fishing expedition" and trying to force an insurer to search thousands of claims files for vaguely-defined information. For example, in *McCrink v. Peoples Benefit Life Ins. Co.*, No. Civ.A.2:04CV01068LDD, 2004 WL 2743420, at *6 (E.D. Pa. Nov. 29, 2004), the policyholder requested "information concerning defendant's previous denial of claims based upon the motorcycle exclusion, including the names of previous claimants, litigation information, and the names of the employees that handled and processed the claims." The Court found that this request, which sought "information

---

[48] *See* Exhibit 5, at 76:7-79:19.

regarding *all* bad faith cases concerning the motorcycle exclusion brought against defendant" imposed a burden on the insurer that outweighed the likelihood of finding relevant information. *Id.* (emphasis added). Here, by contrast, Allegheny Ludlum seeks a very limited and narrowly-tailored set of information confined to a very narrow universe of other policyholders, some of whom are already known, in search of unquestionably relevant information.

For these reasons, the Defendant Insurers cannot meet their burden to show that the sought-after discovery is overly burdensome for them to produce.

### D. The Discovery Allegheny Ludlum Seeks Cannot Be Withheld on the Basis of Privilege or Confidentiality

As discussed above, Liberty Mutual has already produced certain other-policyholder material, and has permitted its witnesses to answer questions regarding this material without objection. None of the other Defendant Insurers raised any objections to Liberty Mutual's production of this material or Allegheny Ludlum's deposition questions regarding this material. Indeed, Hartford permitted one of its witnesses to acknowledge that a Hartford employee was a recipient of the document in question. The Defendant Insurers cannot now refuse to produce relevant information of the same type that one of them has already produced, and to the production of which the others have not objected, on the basis that this information is privileged or confidential.

Moreover, Liberty Mutual has voluntarily withdrawn its designation of confidentiality from the Contacts Metals and Welding document it has already produced in this case, thereby permitting Allegheny Ludlum to attach that document to this Brief without filing it or the Brief under seal. The other Defendant Insurers did not object to this de-designation. The Defendant

Insurers therefore appear to have waived their confidentiality argument with respect to the other-policyholder information at issue in this Motion.

For these reasons, the Defendant Insurers cannot hide behind privilege or confidentiality in an effort to shield clearly relevant information from discovery.

## CONCLUSION

For all of the foregoing reasons, Allegheny Ludlum respectfully requests that this Court grant Allegheny Ludlum's Motion to Compel and enter the attached proposed order.

**K&L GATES LLP**

*/s/ David R. Osipovich*

Thomas J. Smith, Esq.
David R. Osipovich, Esq.
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania  15222-2613

Dated:  January 22, 2019                *Attorneys for Plaintiff Allegheny Ludlum, LLC*