**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Allegheny Ludlum, LLC, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | No.: 2:17-CV-001243-PJP |
| | ) | |
| vs. | ) | Judge Peter J. Phipps |
| | ) | |
| Liberty Mutual Insurance Company; Liberty | ) | **FILED ELECTRONICALLY** |
| Mutual Fire Insurance Company; Hartford | ) | |
| Casualty Insurance Company; Hartford | ) | |
| Accident and Indemnity Company; Continental | ) | |
| Casualty Company; United States Fidelity and | ) | |
| Guaranty Company, | ) | |
| | | |
| Defendants. | | |

**PLAINTIFF ALLEGHENY LUDLUM, LLC'S REPLY BRIEF IN SUPPORT OF**
**MOTION TO COMPEL DISCOVERY CONCERNING THE DEFENDANT INSURERS'**
**TREATMENT OF OTHER *BELL CARR* DEFENDANTS**

Plaintiff Allegheny Ludlum, LLC ("Allegheny Ludlum"), by and through its undersigned

counsel, K&L Gates LLP, files this Reply Brief in Support of Plaintiff Allegheny Ludlum LLC's

Motion to Compel Discovery Concerning Defendant Insurers' Treatment of Other *Bell Carr*

Defendants ("Motion to Compel").

I.      **INTRODUCTION**

In their Oppositions to Allegheny Ludlum's Motion to Compel, Liberty Mutual, Hartford,

and CNA[1] (collectively, the "Defendant Insurers") have failed to show that the four

interrogatories and single document request at issue in the Motion to Compel are irrelevant,

---

[1] "Liberty Mutual" refers to Defendant Liberty Mutual Insurance Company and Defendant
Liberty Mutual Fire Insurance Company.  "Hartford" refers to Defendant Hartford Casualty
Insurance Company and Defendant Hartford Accident and Indemnity Company.  "CNA" refers
to Defendant Continental Casualty Company.

overly burdensome, or are improperly seeking privileged or confidential information.  Therefore, in light of the liberal standards for discovery, their Oppositions fail, and the Motion to Compel should be granted.

With respect to relevance, the Defendant Insurers argue that insurance-contract disputes are to be resolved by reference to the specific contractual language at issue, and not to the language of third-party contracts.  But of course here all three Defendant Insurers had previously acknowledged a duty to defend Allegheny Ludlum in the underlying *Bell Carr* Litigation under their specific contractual language.  They then changed that view.  The sought-after discovery is relevant because it goes to the reasons for that changed view, and whether that view was applied consistently to other policyholders of these same insurers regarding the same underlying facts.

The sought-after discovery is especially relevant to Allegheny Ludlum's bad faith claims-handling claims against Liberty Mutual and Hartford: if Liberty Mutual and Hartford provided coverage to other similarly-situated *Bell Carr* defendants while denying it to Allegheny Ludlum, this would be probative of whether Liberty Mutual and Hartford took advantage of Allegheny Ludlum on the basis of specious reasoning that they did not apply to other *Bell Carr* defendants.

With respect to burden, Liberty Mutual and Hartford rely on affidavits that purport to demonstrate how onerous it would be for them to respond to the sought-after discovery (CNA focuses the entirety of its page-and-a-half Opposition on relevance, thereby conceding all other arguments it may have had in Opposition to the Motion to Compel).  However, Liberty Mutual's burden affiant has now conceded, in a deposition taken after the affidavit was submitted to this Court, that Liberty Mutual's burden claims in its Opposition are false, and that in fact Liberty Mutual can quickly and easily locate the information that Allegheny Ludlum is seeking in its Motion to Compel either because it is located in a searchable database or through the application

2

of optical character recognition ("OCR") software.  In fact, Liberty Mutual's affiant admitted during her deposition last week that Liberty Mutual has already located at least some of the information in the at-issue interrogatories.  Hartford's burden affiant has yet to be deposed, but given the fact that Hartford, like Liberty Mutual, is a sophisticated corporate entity with the ability to apply OCR software to text, there is no reason to believe that Hartford's ability to locate the sought-after information is not comparable to Liberty Mutual's.

With respect to privilege and confidentiality, the Defendant Insurers' arguments are without merit.  To the extent that privileged attorney-client communications are responsive to the at-issue discovery, those communications can be protected by withholding them and providing Allegheny Ludlum with a proper privilege log.  To the extent that confidential documents are responsive to the at-issue discovery, those documents can be protected with a "Confidential" designation under this Court's Stipulated Protective Order.  The mere fact that privileged or confidential documents may be responsive to the at-issue discovery requests is not a valid reason for the Defendant Insurers to refuse to produce any information or documents in response to those requests, especially given that Liberty Mutual has already produced at least one other-policyholder document in this action.

Finally, Liberty Mutual — and Liberty Mutual alone — argues that the Motion to Compel is untimely.  Liberty Mutual's argument depends on a gross distortion of the facts that led to the Motion to Compel and should be rejected.

For all these reasons, as discussed in the Brief in support the Motion to Compel, and as discussed further below, Allegheny's Motion to Compel should be granted.

II.     **ARGUMENT**

       A.     **Allegheny Ludlum's Motion to Compel Seeks Indisputably Relevant Information.**

             *1.     Allegheny Ludlum has met its initial (slight) burden of demonstrating the relevance of the sought-after discovery.*

Allegheny Ludlum has met its initial burden on a motion to compel to demonstrate the relevance of the sought-after discovery.  Notably, that burden is slight, given the very broad scope of discovery under the Federal Rules of Procedure.  *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."); *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999) ("It is well recognized that the federal rules allow broad and liberal discovery."); *Lopez v. CSX Transp., Inc*., No. 3:14–257, 2015 WL 5971682, at *2 (W.D. Pa. Oct. 14, 2015) "…[T]he scope of discovery under the Federal Rules is broad….").

    Specifically, Allegheny Ludlum has presented evidence demonstrating that Liberty Mutual and Hartford were providing some sort of *Bell Carr*-related insurance coverage to at least one other *Bell Carr* defendant — Contacts Metals and Welding ("CMW") — as late as August 2012.[2]  This means that Liberty Mutual and Hartford were providing coverage to another *Bell Carr* defendant more than three years after the issuance of the 2009 Alabama Supreme Court Decision, that is, more than three years after the date they claim Allegheny Ludlum's *Bell Carr* coverage was extinguished.  It also means that they were providing coverage to this other *Bell Carr* defendant five years after the cause of action pending against all *Bell Carr* defendants was limited to "wantonness," which all of the Defendant Insurers now claim is not covered under any of their policies.

---

[2] *See* ECF No. 85-9, at AL_LM_0001317–18.

Significantly, Liberty Mutual produced other policyholder evidence regarding CMW — specifically, an email regarding the *Bell Carr* Litigation from CMW's Alabama defense counsel to, *inter alia*, a Liberty Mutual claims handler and a Hartford claims handler[3] — in response to Allegheny Ludlum's first set of discovery requests. Clearly, then, Liberty Mutual considered this evidence to be relevant. Moreover, when Liberty Mutual and Hartford witnesses testified regarding this document, no Defendant Insurer objected to the relevance of either the document or testimony regarding it.[4]

The discovery Allegheny Ludlum seeks in its Motion to Compel follows up on this evidence, which appears to show that at least two Defendant Insurers, Liberty Mutual and Hartford, were treating at least one other *Bell Carr* defendant (CMW) differently from how they were treating Allegheny Ludlum. Specifically, it seeks to determine whether and to what extent the Defendant Insurers were treating similarly-situated policyholders differently from how they were treating Allegheny Ludlum with respect to the *Bell Carr* Litigation. Under this Court's precedent, which the Defendant Insurers have not challenged[5], discovery regarding an insurer's

---

[3] *See id.*
[4] *See* ECF No. 85-5, at 70:23-84:24; ECF No. 85-24, at 111:5-14.
[5] The Defendant Insurers have not provided any explanation as to why *Mine Safety* would not apply here, nor have they cited to a single case contravening its holding. Instead, the Defendant Insurers support their Oppositions with citations to inapposite, distinguishable cases. *See, e.g., McCrink v. Peoples Benefit Life Ins.*, No. 2:04CV01068LDD, 2004 WL 2743420, at *6 (E.D. Pa. Nov. 29, 2004) (in which the policyholder sought discovery regarding *all prior* bad faith actions pertaining to a particular exclusion); *Adams v. Allstate Ins. Co.*, 189 F.R.D. 331, 333 (E.D. Pa. 1999) (holding that "[p]ast [bad faith] claims by other insureds are not relevant *to the present bad faith action*"); *In re Texas E. Transmission Corp., PCB Contamination Ins. Coverage Litigation,* No. MDL 764, 1989 U.S. Dist. LEXIS 19093, at *16-17 (E.D. Pa. Aug. 3, 1989) (in which the policyholder sought every single commercial general liability and excess liability policy ever issued by the defendant insurers at any time); *Zettle v. Am. Nat'l Prop. & Cas., Co.*, No. 3:10-cv-307, 2012 WL 2359962, at *1 (W.D. Pa. June 20, 2012) (in which the policyholder sought *any claim file*, regardless of the degree of similarity to the policyholder's situation, in which the insurer denied an underinsured or uninsured motorist claim involving a particular policy option and/or any such claim denied on the basis of the advice of counsel); *Graham v.*

"treatment of claims made by similarly situated policyholders" is relevant and discoverable. *Mine Safety Appliances Co. v. North River Ins. Co.*, No. 2:09–cv–00348–DSC, 2012 WL 4339560, at *2–3 (W.D. Pa. Jan. 27, 2012). Therefore, Allegheny Ludlum has met its (slight) initial burden to demonstrate relevance.

> 2.   *The Defendant Insurers have failed to meet their burden of demonstrating, with particularly, and not through mere assertion, that the sought-after discovery is not relevant.*

Since Allegheny Ludlum has met its (very slight) initial burden as to relevance, the burden shifts to the Defendant Insurers to show — with specificity and not through mere *ipse dixit* — that each of Allegheny Ludlum's sought-after discovery requests is irrelevant. *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982) ("[T]the mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting discovery must show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive."); *UPMC v. CBIZ, Inc.*, No. 3:16-cv-204, 2018 WL 1542423, at *3 (W.D. Pa. Mar. 29, 2018) ("The person resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient."); *Parisi v. State Farm Mut. Auto. Ins. Co.*, No. 3:16-179, 2017 WL 4403326, at *7–8 (W.D. Pa. Oct. 2, 2017) (rejecting the defendant's "threadbare" and "boilerplate response that the request was overly broad, not reasonably calculated to lead to the discovery of admissible evidence, and that the information requested irrelevant and protected by the work product doctrine" in holding that the plaintiff was

---

*Progressive Direct Ins. Co.*, No. 09-969, 2010 WL 3092684, at *1 (W.D. Pa. Aug. 6, 2010) (in which the plaintiff sought discovery of information relating to the insurer's valuation of insurance claims for other shoulder and knee injuries).

entitled to discovery of documents related to the defendant's process for determining reserves in uninsured motorist claims).

The Defendant Insurers have failed in their Oppositions to "show specifically" how each at-issue interrogatory is irrelevant (or overly broad, or burdensome, etc.). Indeed, none of the Defendant Insurers has even attempted an interrogatory-by-interrogatory analysis of the at-issue interrogatories. Instead, the Defendant Insurers have made a blanket argument that all five of the at-issue discovery requests[6] are irrelevant because they do not implicate the specific contract language found in the Defendant Insurers' policies. Aside from the fact that this argument fails because it is not sufficiently specific under *Josephs*, it fails for at least three reasons.

***First***, it is false that the present dispute is merely a dispute regarding the interpretation of specific contractual language. There is in fact no dispute that the *Bell Carr* Litigation triggered each of the Defendant Insurers' duties to defend Allegheny Ludlum under each of their policies, since they have each previously acknowledged their duty to defend.[7] Rather, the dispute here is

---

[6] In addition to the four interrogatories at issue in the Motion to Compel, there is a single at-issue document request that simply seeks the documents "relied upon, identified, or referred to" in the answer to the interrogatories. *See, e.g.*, ECF No. 85-28, at 5.

[7] *See, e.g.,* ECF Nos. 85-2, 85-3, 85-4, 85-14. A commercial general liability insurance policy, such as all of the policies at issue in this case, is "triggered" when a claim brought against the policy falls within the scope of that policy, thereby activating or triggering an insurer's duty to defend the policyholder. *See Selective Way Ins. Co. v. Hospitality Grp. Servs, Inc.*, 119 A.3d 1035, 1046 (Pa. Super. Ct. 2015) ("The law is clear that when an insured who has been sued requests coverage under a policy of insurance, the insurer is required to accept all of the allegations contained in the third party's complaint as true and provide a defense if there is a chance that the injury alleged could potentially fall within the scope of the policy. The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint. An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy. The duty to defend is not limited to meritorious actions; it even extends to actions that are groundless, false, or fraudulent as long as there exists the possibility that the allegations implicate coverage. The duty to defend persists until an insurer

whether facts and rulings that developed in the underlying *Bell Carr* Litigation after the

Defendant Insurers' acknowledgment extinguished their duty to defend.  The sought-after

discovery goes directly to the heart of that question: if the facts and rulings that the Defendant

Insurers now claim extinguished Allegheny Ludlum's *Bell Carr* coverage did not extinguish

other *Bell Carr* defendants' coverage, the reasons why go directly to the legitimacy of the

Defendant Insurers' coverage defenses.

   ***Second***, Allegheny Ludlum has bad faith claims against two of the Defendant Insurers,

Liberty Mutual and Hartford.   To prove bad faith against Liberty Mutual and Hartford,

Allegheny Ludlum may present evidence that these insurers, *inter alia*, made statements that

were "misrepresentation[s] for the purpose of inducing or tending to induce the lapse, forfeiture,

exchange, conversion or surrender of any insurance policy."  PA ST 40 P.S. § 1171.5(a)(1)(vi);

*See Parasco v. Pacific Indem. Co.*, 920 F. Supp. 647, 655 (E.D.Pa. 1996) ("The court may …

consider the provisions of Pennsylvania's Unfair Insurance Practices Act, 40 Pa.Cons.Stat.Ann.

§§ 1171.1—1171.15 (1992) ('UIPA') when determining whether an insurer has acted in bad

faith.").  What Liberty Mutual and Hartford told other *Bell Carr* defendants regarding the impact

of the 2009 Alabama Supreme Court Decision and Alabama law regarding "wantonness" on

coverage for *Bell Carr* is directly relevant to determining whether the statements Liberty Mutual

and Hartford made to Allegheny Ludlum regarding these issues were misrepresentations

designed to induce Allegheny Ludlum to forfeit coverage.

   ***Third***, Liberty Mutual and Hartford contend that the sought-after discovery is not

relevant because other policyholders "could be insured under policies with different language or

different policy periods, the policies could be governed by a different state law; or the insurer's

---

can limit the claims such that coverage is impossible.") (internal punctuation and citations
omitted).

obligation could be determined by some contract other than the policies."[8]  This contention fails because, far from demonstrating the irrelevance of the sought-after discovery, it is an articulation of a key question at the heart of the sought-after discovery.  If all other *Bell Carr* defendants were differently situated from Allegheny Ludlum — if, as Hartford succinctly puts it, all other *Bell Carr* defendants had different policy language, or different policy periods, etc. — the Defendant Insurers could have said so in their responses to the relevant interrogatories.  Instead, they categorically refused to provide Allegheny Ludlum with any additional information or documents pertaining to their treatment of the other *Bell Carr* defendants to whom they provided coverage.  In their Oppositions, they continue to fail to provide any actual information regarding whether any other *Bell Carr* policyholders are not similarly situated to Allegheny Ludlum. Instead, they merely suggest, without proof, that they *might* be differently situated.  This is grossly inadequate under the Defendant Insurers' *Josephs* burden.

For all these reasons, the Defendant Insurers have failed to show with specificity how each of the at-issue interrogatories (and corresponding single document request) is irrelevant.

**B.      The Defendant Insurers Have Failed to Demonstrate That the Sought-After Discovery Imposes an Undue Burden.**

It is the Defendant Insurers' burden to explain how answering each one of the five at-issue discovery requests is unduly burdensome, and this burden cannot be carried by mere *ipse dixit*.  *Josephs*, 677 F.2d at 992.   The Defendant Insurers have failed to meet this burden.  CNA does not even attempt to meet it, and so concedes the point.  Liberty Mutual's burden argument rests entirely on the affidavit of a Liberty Mutual representative, Ms. Christa Fletcher, who has now admitted in deposition testimony taken last week, on February 13, 2019, that Liberty Mutual already has located at least some of

---

[8] ECF 94, at 5.  Liberty Mutual makes a similar argument in ECF No. 97, at 15.

the information that Allegheny Ludlum is seeking and could quickly and easily locate the rest.

Liberty Mutual claims in its Opposition that "although Liberty Mutual can identify insureds who were defendants in the *Carr* Litigation, this is not a situation in which the claims files are available electronically and can be searched with a few key word searches."[9]  In fact, Liberty Mutual's affiant, Ms. Fletcher, admitted during her deposition that this is precisely a situation in which claim files are available electronically and can be searched with a few key word searches.[10]

Specifically, Ms. Fletcher admitted that:

- Liberty Mutual already knows the names of the other *Bell Carr* defendants to whom it provided coverage for *Bell Carr*[11];

- There are fewer than 20 such other *Bell Carr* defendants[12];

- Liberty Mutual has already collected the claim files of these other *Bell Carr* defendants[13];

---

[9] ECF No. 97, at 16.

[10] *See* February 13, 2019 Deposition of Christa Fletcher, the entirety of which is attached hereto as Exhibit 1. Specific relevant portions are cited below.

[11] *Id.* at 93:20-95:9 ("Q: We know three names: Allegheny Ludlum, Contacts, Metals & Welding, and Alloy Rods. I'm not asking what the full list is. My question is: Liberty Mutual knows what the full list is; right? MR. SULLIVAN: Objection. A. Yes."); 131:1-133:8.

[12] *Id.* at 131:1-133:8 ("Q. Okay. Do you know how many names are on that list? A. I don't remember. Q. But it's less than 60, because there are only about 60 defendants in Bell Carr; right? A. Yeah. Correct. Q. Do you remember if it's a dozen, 10, 20, 5? A. Ten to 20. Q. Ten to 20. Okay.").

[13] *Id.* at 108: 1-6 ("Q. Didn't you testify that Kathy MacDonald had already searched for and found the claims, the Bell Carr claims pertaining to the other Bell Carr defendants besides Allegheny Ludlum? A. Yes."); *id.* at 131:1-133:8 ("Q. Then Paragraph 8, you say, 'The claims materials for these other policyholders are voluminous. Based on an initial review, there are approximately 23,000 total pages of claims materials for these other policyholders.' So if you know that there's approximately 23,000 pages, that means that these materials have already been collected; right? A. Yes. Q. Okay. And these materials that have already been collected, are they claim remarks or something else? A. They're the claims files.").

- Liberty Mutual can quickly and easily identify the effective policy periods of the Liberty Mutual policies issued to these other *Bell Carr* defendants[14];

- Liberty Mutual can quickly and easily identify the amounts Liberty Mutual paid under its policies for these other *Bell Carr* defendants' *Bell Carr* claims[15];

- Liberty Mutual can search with key terms both the electronic and hard copy claim files associated with these other *Bell Carr* defendants, either because the files are immediately searchable, or through a simple process of running OCR on files that are not immediately searchable and thereby making them searchable.[16]

These admissions eviscerate Liberty Mutual's burden argument, and make clear that Liberty Mutual already has much of the information it claims in its Opposition would be overly burdensome to locate.  Further, Ms. Fletcher's testimony demonstrates that the rest of the sought-after information can be easily and quickly located by using search terms that Liberty Mutual falsely claims in its Opposition cannot be used here.[17]

---

[14] *Id.* at 93:11-19:19 ("Q. But you see the effective dates immediately? A. Yes. For all policies relating to the account that I've selected. Q. And from typing the name of the policyholder into that system to getting back the effective period, how long does that take? Minutes? Seconds? A. Seconds."); 172:5-173:13 ("Q. Okay. And since Liberty Mutual already knows the names of the other Bell Carr policyholders, does it also know the account numbers since it has the names? A. Yes. The account number could be determined. Q. Okay. So you have the names. You could determine the account numbers. And once you have the account numbers, you put those into PolicyView. And policies, if they're there, would appear; right? A. Correct.").

[15] *Id.* at 107:5-107:24 ("Q. Now I'm talking about amounts, if any, you paid under such policy. So to find information on Number 3 for other Bell Carr defendants, it would just be a matter of finding the loss runs for those other Bell Carr defendants; right? MR. SULLIVAN: If you know. A. Yes. We would need to pull the loss runs. Q. And you just told me that you have no reason to believe that pulling loss runs is onerous, burdensome, difficult, time-consuming or anything of the sort. MR. SULLIVAN: Objection. Q. I think you literally just told me that. I'm just asking you to confirm that. A. Yes.").

[16] *Id.* at 39:13-40:16; 101:22-103:19; 132:7-140:24 (Q. "Okay. And you're aware that you can take a piece of paper and you can scan it and you can apply OCR software, image-reading software, and then you can use that software to quickly search the scanned version of the hard copy? A. Yes. You can search it. Q. Okay. So the 23,000 pages, regardless of whether they're ESI originally or whether they're hard copy that can be turned into ESI and then have OCR applied to them, all of those 23,000 pages can be searched? A. Yes.").

[17] Allegheny Ludlum is troubled by Liberty Mutual's attempts to support its Opposition to the Motion to Compel with factual assertions, and a sworn affidavit, which have now been directly

Hartford's burden affiant has yet to be deposed, but given the fact that Hartford, like Liberty Mutual, is a sophisticated corporate entity with the ability to apply OCR software to text, there is no reason to believe that Hartford's ability to locate the sought-after information is not comparable to Liberty Mutual's.

For all these reasons, the Defendant Insurers have failed to show with specificity how each of the at-issue interrogatories (and corresponding single document request) are overly burdensome.

**C.      The Defendant Insurers Privilege and Confidentiality Arguments Lack Merit.**

The Defendant Insurers claim that privilege and confidentiality concerns prevent them from producing any information or documents responsive to the at-issue requests.[18]  This position cannot be supported, for the following four reasons.

*First*, to the extent there are privileged attorney-client communications that are responsive to the at-issue discovery requests, the Defendant Insurers are required to log that material on a proper privilege log.  The mere fact that discovery requests may implicate privileged communications does not permit a party to refuse to comply with the discovery requests *in toto*.  And it is indisputable that the at-issue discovery requests do not only implicate attorney-client privileged communications, since they expressly seek things like (without limitation) insurance policy periods, amounts paid under insurance policies, and coverage position letters sent from the Defendant Insurers to other policyholders.

---

contradicted by sworn deposition testimony of the affiant.  Allegheny Ludlum reserves all of its rights under Federal Rule of Civil Procedure 37.

[18] ECF No. 94, at 6–8; ECF No. 97, at 18–19.

*Second*, to the extent the Defendant Insurers have confidentiality concerns regarding information and documents responsive to the at-issue requests, there is a Stipulated Protective Order in this case that assuages those concerns.[19]

*Third*, as with relevance and burden, any claims of privilege or confidentiality have to be made on a specific interrogatory-by-interrogatory basis. *See Josephs*, 677 F.2d at 992. The Defendant Insurers do not even attempt such specificity in their Oppositions.

*Finally*, the Defendant Insurers' Oppositions do not offer any reasons for or argument as to how information of the same type that they have already produced without confidentiality designations is somehow both privileged and confidential. Liberty Mutual has already produced certain other-policyholder material, and has permitted its witnesses to answer questions regarding this material without objection. None of the other Defendant Insurers raised any objections to Liberty Mutual's production of this material or Allegheny Ludlum's deposition questions regarding this material. The Defendant Insurers cannot now refuse to produce relevant information of the same type that one of them has already produced, and to the production of which the others have not objected, on the basis that this information is privileged or confidential.

For all of these reasons, the Defendant Insurers have failed to show with specificity how each of the at-issue interrogatories (and corresponding single document request) are protected from disclosure by either privilege or confidentiality.

### D. Liberty Mutual's Timeliness Argument Is Founded On a Mischaracterization of the Record.

Of the three Defendant Insurers subject to this Motion, only Liberty Mutual has made the argument that Allegheny Ludlum's Motion to Compel is untimely. Clearly, neither Hartford nor

---

[19] *See* ECF No. 72.

CNA were comfortable with the distortions of the record on which Liberty Mutual relies in making this argument.

Liberty Mutual first produced a version of the evidence showing that Liberty Mutual and Hartford provided coverage to other *Bell Carr* defendants — the CMW document — on September 5, 2018.[20]  Liberty Mutual's initial production suffered from certain technical difficulties, such that Liberty Mutual had to make a supplemental production on October 12, 2018.[21]  Although it turned out that the version of the CMW document produced in September did not suffer from the same technical difficulties as other documents in that production, Allegheny Ludlum had no way of knowing this until it was able to review Liberty Mutual's October 12 production.

Allegheny Ludlum served the discovery requests at issue in the Motion to Compel shortly after receiving Liberty Mutual's October production, on October 31, 2018.[22]  Liberty Mutual did not respond to these discovery requests until November 30, 2018.[23]  Allegheny Ludlum reached out to Liberty Mutual regarding its responses several days after having received them and requested a meet and confer.[24]  The meet-and-confer process took several weeks, and was not complete until several of the defendant insurers' counsel had made certain inquiries of their clients.[25]  Although Allegheny Ludlum did indicate in a December 11, 2018 email that "a motion to compel is ripe," the scope of that motion was not certain until counsel completed their inquiries.  Indeed, at the time of the December 11, 2018 email, Defendant Travelers Indemnity

---

[20] *See* ECF No. 85-9, at AL_LM_0001317–18.

[21] *See* October 2, 2018 email from Thomas Smith to John C. Sullivan and Kathleen Kerns, and October 12, 2018 email from Richard Barca to Thomas Smith and David Osipovich, true and correct copies of which are attached hereto as Exhibit 2.

[22] ECF No. 85-25.

[23] ECF No. 85-41.

[24] *See* ECF No. 85-45.

[25] *See id.*

Company ("Travelers") had not yet responded to at-issue discovery requests, and it was not yet clear if the Motion to Compel would include Travelers.  Travelers' responses were not served until January 3, 2019.[26]

As is clear from this timeline — the majority of which Liberty Mutual fails to mention in an effort to paint Allegheny Ludlum as lackadaisical with respect to the Motion to Compel — Allegheny Ludlum has been seeking the at-issue discovery since shortly after Liberty Mutual produced the material that necessitated it.  Far from sitting on its rights with respect to this discovery, Allegheny Ludlum has diligently pursued it, said diligence resulting in a timely Motion to Compel.

For all these reasons, Liberty Mutual's contention of untimeliness — and its implication that the sought-after discovery would have to be completed by the end of February — should be rejected.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, Allegheny Ludlum respectfully requests that this Court grant Allegheny Ludlum's Motion to Compel.

**K&L GATES LLP**

<u>*/s/ David R. Osipovich*</u>

Thomas J. Smith, Esq.
David R. Osipovich, Esq.
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania  15222-2613

Dated:  February 20, 2019          *Attorneys for Plaintiff Allegheny Ludlum, LLC*

---

[26] ECF Nos. 85-43, 85-44